IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 13-cv-00074-RBJ

JOHN CARBONELL,

      Applicant,

v.

FRANCIS FALK, Warden, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

Applicant, John Carbonell, has filed *pro se* an Application for a Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254 challenging the validity of his criminal conviction in the District

Court of Adams County, Colorado.  Respondents have filed an Answer [Doc. # 23], and

Applicant has filed a Traverse [Doc. # 26].  Having considered the same, along with the state

court record, the Court will deny the Application.

## I.  BACKGROUND

On April 21, 2000, Applicant was convicted by a jury of the first degree murder of his

wife in Adams County District Court Case No. 99CR1764. [Doc. # 13-1, at 1].  He was

sentenced to a term of life in prison without parole.  [Doc. # 13-2, at 10].

The Colorado Court of Appeals affirmed Applicant's conviction on direct appeal in

*People v. Carbonell* (*Carbonell I*), No. 00CA1258 (Colo. App. July 11, 2002) (unpublished

decision). [Doc. # 13-4].  The United States Supreme Court denied Applicant's request for

certiorari review on October 6, 2003. [Doc. # 13-6].

Applicant filed a motion for post-conviction relief in the state district court on April 16, 2003, which was pending for several years until the motion was denied on April 21, 2010. [Doc. # 13-7].  The Colorado Court of Appeals affirmed the trial court's order in *People v. Carbonell* (*Carbonell II*), 10CA1144 (Colo. App. June 14, 2012). [Doc. # 13-9].  The Colorado Supreme Court denied Applicant's petition for certiorari review on November 27, 2012. [Doc. # 13-1].

Applicant initiated this action on January 14, 2013.  He asserts the following claims in the Application:

(1)  Applicant was denied a fair trial by the trial court's failure to: (a) excuse a biased juror for cause, requiring Applicant to remove her by peremptory challenge; (b) individually (rather than collectively) voir dire jurors who said they had only a vague recollection of publicity involving the victim's murder; and, (c) failure to inquire whether the jurors "should be disqualified as required by State law (depriving Applicant of a substantive due process right)." [Doc. # 1, at 5].

(2) Applicant was denied a fair trial because there were references at trial to the fact that a witness (who testified that Applicant killed the victim) had failed a polygraph after initially telling the police she had no knowledge of the murder. [*Id*. at 6].

(3) The trial court violated Applicant's Fourteenth Amendment right to a fair trial by admitting the testimony of lay witnesses who opined that Applicant committed the murder and should be punished for it. [*Id*.].

(4) The trial court violated Applicant's Fourteenth Amendment right to a fair trial by admitting transcripts of "child support hearings" containing irrelevant, unfounded, and prejudicial allegations against Applicant. [*Id*. at 7].

(5) Applicant was deprived of a fair trial by the cumulative prejudicial effect of trial errors. [*Id*.].

(6) Applicant's trial counsel was constitutionally ineffective in failing to: (a) follow up on an initial contact with an adverse trial witness (Applicant's girlfriend) to determine whether she would submit to a defense interview; (b) present at trial the testimony of Barbara Johnson, who told a defense investigator that she would testify to facts amounting to an alibi; (c) discuss with Applicant the possibility of presenting an alternate suspect defense, depriving Applicant of the opportunity to decide what defense theory to pursue at trial; (d) ask Applicant's former boss on direct examination whether Applicant "would have been aware" of a statute precluding him from collecting a life insurance payout on his wife if it

was discovered that he had murdered her; (e) hire experts to evaluate: (1) whether the victim's blood, found on the marital mattress, might have been menstrual blood, and, (2) whether Applicant's mental state at the time of the crime might have supported a second degree murder instruction or some other theory of defense; (f) request a curative instruction informing the jury that polygraphs are not reliable, and that the jurors should disregard any evidence concerning the previously mentioned polygraph; and, (g) "cumulative error deprived Applicant of his Sixth Amendment right to effective assistance of counsel." [*Id.* at 7-8].

On January 23, 2013, Magistrate Judge Boyd N. Boland ordered Respondents to file a preliminary response addressing the affirmative defenses of timeliness and exhaustion of state court remedies.  In the preliminary response, Respondents conceded that the Application was timely under the one-year limitation period set forth in 28 U.S.C. § 2244(d)(1).  [Doc. # 14-1, at 6-9].  Respondents further conceded that Applicant exhausted claims 1(a), 2, 3, 4, 6(a), 6(b) and 6(e) as federal issues in the state appellate courts.  [*Id.* at 12].  Respondents argued, however, that Applicant failed to exhaust state remedies for claims 1(b), 1(c), 5 and 6(d) because he did not present those claims to the Colorado Supreme Court in a petition for certiorari review.  Respondents also contended in the pre-answer response that Applicant procedurally defaulted claims 6(c), 6(f) and 6(g) in the state courts. [Doc. # 14-1, at 22-23].

In a previous Order, Magistrate Judge Boland rejected Respondents' argument that claims 1(b), 1(c), 5 and 6(d) were not exhausted. [Doc. # 20, at 8].  Magistrate Judge Boland further found that claims 6(c), 6(f) and 6(g) were procedurally defaulted, but deferred ruling on whether Applicant demonstrated cause for his procedural default of those claims pursuant to *Martinez v. Ryan*, ___ U.S. ___, 132 S. Ct. 1309 (2012).  [*Id.* at 14].

The Court addresses Applicant's claims, in turn, below.

## II.  LEGAL STANDARDS

### A.  28 U.S.C. § 2254

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The applicant bears the burden of proof under § 2254(d). *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011). In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Id*. at 784. Thus, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id*. at 784-85. Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id*. at 784. In other words, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the court "must uphold the state court's summary decision unless [the court's] independent review of the record and pertinent federal law persuades [the court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light

of the evidence presented." *Id*. at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id*. The *Richter* presumption is also applicable when a state-court opinion addresses some but not all of the claims. *Johnson v. Williams*, 133 S. Ct. 1088, 1094-98 (2013).

The court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question the court must answer under § 2254(d)(1) is whether the applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established federal law, that is the end of the court's inquiry pursuant to § 2254(d)(1). *See id*. at 1018.

If a clearly established rule of federal law is implicated, the court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and

> brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'"  *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts.  *Id.* at 407-08.  Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry.  *See Williams*, 529 U.S. at 409–10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable."  *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law."  *Maynard*, 468 F.3d at 671.  In addition,

> evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 131 S.Ct. at 786 (internal quotation marks omitted).  In conducting this analysis, the court "must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  *Id.*  Moreover, "review under

§ 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 131 S.Ct. at 786 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S.Ct. 786–87.

The court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows the federal court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the court must presume that the state court's factual determinations are correct and the petitioner bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller–El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

**B. PRO SE LITIGANT**

Applicant is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that an applicant can prove facts that have not been alleged, or that a respondent has violated laws in ways that an applicant has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). An applicant's *pro se* status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### III.  MERITS OF THE CLAIMS

#### A.  Claim 1(a)

In claim 1(a), Applicant claims that he was denied a fair trial because the trial court failed to excuse a biased prospective juror for cause, requiring Applicant to remove her by peremptory challenge. [Doc. # 1, at 5].

The Constitution guarantees a fair and impartial jury to criminal defendants. *Ross v. Oklahoma*, 487 U.S. 81, 89-91 (1988); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). However, the Constitution is not violated where the trial court erroneously denies a defendant's challenge for cause to a biased prospective juror "if the defendant elects to cure such an error by exercising a peremptory challenge." *United States v. Martinez-Salazar*, 528 U.S. 304, 307 (2000); *see also Ross*, 487 U.S. at 86 (although trial court erred by failing to dismiss prospective juror for cause,

error did not deprive petitioner of an impartial jury or of any interest provided by the State where defense exercised peremptory challenge to remove him).

On direct appeal, the Colorado Court of Appeals denied Applicant's claim because the trial court record supported the trial court's determination that the "juror did not have a preconceived opinion regarding [Applicant's] guilt."  [*Carbonell I*, Doc. # 13-4, at 6].

Although the state appellate court did not apply the applicable federal standard, it decided Applicant's claim on the merits.  The state court's determination is thus afforded deference under the AEDPA standard of review.  *See Richter,* 131 S.Ct. at 784-85; *Aycox*, 196 F.3d at 1177.  The Court finds that the Colorado Court of Appeals' disposition of Applicant's claim did not offend federal law. Claim 1(a) therefore will be dismissed.

## B.  Claim 1(b)

In claim 1(b), Applicant asserts that the trial court denied him a fair trial by failing to individually voir dire prospective jurors who said they had only a vague recollection of publicity involving the victim's murder.  [Doc. # 1, at 5].

The following summary of facts, taken from the Colorado Court of Appeals' decision on direct appeal, is relevant to this claim:

> Prior to voir dire, each prospective juror was given a questionnaire that asked, inter alia, whether he or she 1) had "no prior knowledge of the incident;" 2) "vaguely" recalled the incident, but recalled "no details;" 3) had a "good recollection" of the incident, but no recollection of the arrest of defendant; 4) had a "good recollection of the incident," recalled the arrest, but recalled no details of the arrest; or 5) had "a good recollection of the incident" and recalled "some details" of the arrest. The questionnaire also asked: "Do you believe that whatever you heard, saw or read about the incident or the arrest . . . will affect your ability to decide this case solely based on the evidence, or lack of evidence, presented at trial?"

> The court individually interviewed in camera only those jurors who indicated they had a good recollection of the case and denied, with some

exceptions, [Applicant's] request that the court interview those with a vague recollection of the incident.

[*Carbonell I*, Doc. # 13-4, at 6-7].[1]

"[P]art of the guarantee of a defendant's right to an impartial jury is an adequate voir dire to identify unqualified jurors." *Morgan v. Illinois*, 504 U.S. 719, 729 (1992). However, the state trial court retains great flexibility in conducting voir dire. *Mu'Min v. Virginia*, 500 U.S. 415, 427 (1991). Federal habeas review is limited because "'[t]he state trial judge had the benefit of observing the general demeanor of the jurors as the basis for his general finding'" of impartiality. *Brecheen v. Reynolds*, 41 F.3d 1343, 1350 (10th Cir. 1994) (alteration in original) (quoting *Church v. Sullivan*, 942 F.2d 1501, 1519 (10th Cir. 1991)); *see also Ristaino v. Ross*, 424 U.S. 589, 594-95 (1976).

To be entitled to habeas relief, Applicant must demonstrate that the trial court's failure to question a potential juror about a specific issue rendered his trial fundamentally unfair. *Mu'Min*, 500 U.S. at 425 (citing *Murphy v. Florida*, 421 U.S. 794, 799 (1975)). "It is not required . . . that the jurors be totally ignorant of the facts and issues involved . . . . It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin*, 366 U.S. at 722-23 (1961).

The Colorado Court of Appeals denied Applicant's claim on the ground that the trial court did not abuse its discretion in refusing to interview certain jurors individually because the jurors in question "confirmed that what they read or heard would not affect them at trial." [*Carbonell I*, Doc. # 13-4, at 7].

---

[1] *See also* State Court R. 4/13/00 Trial Tr. at 59-60, 86-160.

In *Mu'Min*, the Supreme Court rejected the petitioner's claim that the subject of possible bias from pretrial publicity must be covered — which it was — but, in addition, that questions specifically dealing with the content of what each juror has read be asked.  500 U.S. at 431.  The Court held that "the Due Process Clause of the Fourteenth Amendment does not reach this far, and . . . the voir dire examination conducted by the trial court in this case was consistent with that provision."  *Id.* at 431-32.  Based on the holding in *Mu'Min*, the Court finds that the Court of Appeals reasonably applied federal law and that its determination of Applicant's claim was supported by the record of the voir dire proceeding, which demonstrates that the prospective jurors who expressed some ambivalence about their ability to be fair and impartial were excused for cause or through a peremptory challenge.[2]  *Cf. Irvin*, 366 U.S. at 727-28 (concluding that petitioner was denied his constitutional right to an impartial jury where a "pattern of deep and bitter prejudice" was shown to be present throughout the community, and "[t]wo-thirds of the jurors had an opinion that petitioner was guilty and were familiar with the material facts and circumstances involved, including the fact that other murders were attributed to him, some going so far as to say that it would take evidence to overcome their belief.").  Applicant does not point to any evidence to show that one or more of the jurors who sat for his trial had pre-conceived opinions about his guilt.  Applicant therefore cannot prevail on claim 1(b).


## C.  Claim 1(c)

In claim 1(c), Applicant maintains that the trial court violated his constitutional right to a fair trial when the court failed to "inquire of the jurors as to whether they should be disqualified as required by State law (depriving Applicant of a substantive due process right). [Doc. # 1, at 5].

---

[2]*See generally* State Court R., 4/14/00 Trial Tr. at 86-283.

### 1.  Application of procedural default doctrine

Respondents assert in the Answer that although claim 1(c) is technically exhausted because Applicant raised it before the Colorado Court of Appeals as a federal constitutional issue, the claim is procedurally barred because the state appellate court resolved it under the State' plain error rule, without reaching the merits of the constitutional issue. [Doc. # 23, at 18].

"[S]tate-court procedural default . . .  is an affirmative defense," and the state is "obligated to raise procedural default as a defense or lose the right to assert the defense thereafter." *Gray v. Netherland*, 518 U.S. 152, 165–66 (1996).  Respondents did not raise a procedural default defense in their pre-answer response.  However, because Respondents did not affirmatively waive the defense, they may amend their initial response to the Application and assert a procedural default defense in their Answer to the merits.  *See Ahmad v. Furlong*, 435 F.3d 1196, 1202 (10th Cir. 2006) (the "best procedure is to plead an affirmative defense in an answer or other amended answer"); *Day v. McDonough*, 547 U.S. 198, 202 (2006) ("Ordinarily in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer or in an amendment thereto."); *cf. Wood v. Milyard*, 132 S.Ct. 1826, 1834-35 (holding that Tenth Circuit abused its discretion in dismissing habeas petition as untimely where, in the district court, the State twice informed the District Court that it would not "challenge" the timeliness of the petition and thereby deliberately waived the statute of limitations defense).  A constructive amendment is allowed if there is no prejudice to the opposing party and the amendment is not unduly delayed, done in bad faith or with a dilatory motive. *Ahmad*, 435 F.3d at 1202.  Here, Applicant was afforded an opportunity to address the defense in his Traverse/Reply to the

Answer. The Respondents, therefore, are not barred from raising the procedural default affirmative defense in their Answer with respect to claim 1(c).[3]

When a state court reviews for plain error an issue forfeited for lack of trial objection, federal habeas review may be procedurally barred. *See Cargle v. Mullin*, 317 F.3d 1196, 1205-06 (10th Cir.2003). Under the procedural-bar doctrine, "[c]laims that are defaulted in state court on adequate and independent state procedural grounds will not be considered by a habeas court, unless the [applicant] can demonstrate cause and prejudice or a fundamental miscarriage of justice." *Fairchild v. Workman*, 579 F.3d 1134, 1141 (10th Cir. 2009) (internal quotation marks omitted).

The substance of the state's plain error ruling affects the federal habeas court's disposition of the federal claim. When a "state court . . . den[ies] relief for a federal claim on plain-error review because it finds the claim lacks merit under federal law," that "disposition [is] entitled to § 2254(d) deference because it was a form of merits review." *Cargle*, 317 F.3d at 1206. On the other hand, if "a state court den[ies] relief for what it . . . assumes to be federal error, because of the petitioner's failure to satisfy some independent state law predicate" . . . "that non-merits predicate would constitute an independent state ground

_____

[3]Magistrate Judge Boland's finding in a previous order [Doc. # 20] that Applicant exhausted state remedies for claim 1(c) does not preclude a determination of procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991) ("A habeas petitioner who has [procedurally] defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer "available" to him.").

Furthermore, even if the law of the case doctrine is implicated, it "'does not bind a judge to following rulings in the same case by another judge of coordinate jurisdiction as long as prejudice does not ensue to the party seeking the benefit of the doctrine.'" *Rimbert v. Eli Lilly and Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011) (quoting *United States v. Johnson*, 12 F.3d 1540, 1544 (10th Cir. 1993)). In this context, "[t]he relevant prejudice is limited to lack of sufficient notice that one judge is revisiting the decision of a prior judge and the opportunity to be heard with respect to the new ruling." *Id.* Applicant is not prejudiced by Respondents' assertion of the procedural bar argument for the first time in the Answer because he was given an opportunity to address the defense in a traverse to the Answer, but he chose not to do so.

for decision which would warrant application of procedural-bar principles on federal habeas." *Id.*; *see also Douglas v. Workman*, 560 F.3d 1156, 1177–79, 1180 n. 15 (10th Cir. 2009).

The state appellate court reviewed claim 1(c) for plain error because Applicant did not raise an objection at trial. [*Carbonell I*, Doc. # 13-4, at 8]. The court found that regardless of whether the trial court's inquiry into the prospective jurors' qualifications was adequate, there was no plain error because Applicant had his own opportunity to voir dire the prospective jury members and he did not contend that any of the selected jurors had a fiduciary relationship with anyone involved in the case. [*Id.* at 9-10]. The state appellate court's rejection of Applicant's claim was not on federal grounds. Instead, the state court resolved the claim under a prong of plain-error review unrelated to the federal constitutional issue. *See e.g. Glover v. Newton-Embry*, No. 09-6165, 367 F. App'x 925, 928 (10th Cir. Feb. 26, 2010) (unpublished) (habeas petitioner's Sixth Amendment confrontation claim was procedurally barred where state appellate court assumed that the challenged statements could have been excluded pursuant to applicable Supreme Court law, but court rejected claim on a state law plain-error ground).

Because the Colorado Court of Appeals rejected Applicant's claim on an independent state ground, the issue presented in claim 1(c) is barred in federal court. *See Cargle*, 317 F.3d at 1206. This bar can be overcome only if petitioner can show cause and prejudice or a fundamental miscarriage of justice. *See Fairchild*, 579 F.3d at 1141. However, Applicant has not suggested any cause for his attorneys' lack of objection when the trial court failed to "inquire of the jurors as to whether they should be disqualified as required by State law." Moreover, because Applicant has not alleged that he is actually innocent of the crimes of which he was convicted, he cannot show that application of the procedural bar would create a fundamental miscarriage of justice. *See Beavers v. Saffle*, 216 F.3d 918, 923 (10th Cir. 2000) (the fundamental-miscarriage-

of-justice exception requires the applicant to "make a colorable showing of factual innocence."). Accordingly, claim 1(c) will be dismissed as procedurally barred.  In the alternative, the Court finds below that the claim is without merit.

### 2.  Application of AEDPA standard of review

To prevail on this claim challenging the trial court's failure to question prospective jurors about their fiduciary relationships, Applicant must show that the omission in voir dire rendered his trial fundamentally unfair.  *Mu'Min*, 500 U.S. at 425.

As the state appellate court recognized, Applicant had his own opportunity to voir dire the prospective jurors about their fiduciary relationships, but he did not challenge any of the jurors on this basis.[4]  Furthermore, Applicant does not point to any evidence to establish that the trial court's alleged failure to comply with the state criminal procedural rule concerning grounds for juror disqualification resulted in a biased jury.  The Court finds that the Colorado Court of Appeals' rejection of Applicant's claim comported with federal law because Applicant fails to show that trial court's void dire resulted in an impartial jury.  Claim 1(c) therefore is subject to dismissal on the merits if it is not procedurally barred.

## D.  Claim 2

For his second claim, Applicant asserts that he was denied a fair trial by the admission of testimony that his girlfriend (who testified that Applicant admitted to killing the victim) had failed a polygraph after initially telling the police she had no knowledge of the murder. [Doc. # 1, at 6].

---

[4] *See generally* State Court R. 4/13/00 Trial Tr., at 1-283.

At trial, Applicant's girlfriend testified that the police had asked her to take a lie detector test and that during the test, she told the officer she had no information about the murder.[5]  She also testified that she was told the results showed deception and that she subsequently decided to tell the police what she knew.[6]   In addition, a detective testified that he conducted the polygraph examination of Applicant's girlfriend.[7]  The girlfriend's later statements implicating Applicant were not subject to a polygraph test.[8]

Applicant objected on each occasion to the testimony regarding the polygraph test and requested a mistrial.[9]  The trial court overruled the objections, denied the motion for a mistrial, and instructed the jury that polygraph results are "inherently unreliable" and therefore inadmissible in court and ordered the jury to disregard any comments regarding polygraph examinations.[10]

The Colorado Court of Appeals recognized that evidence of polygraph testing is generally inadmissible in a criminal trial, but found that the prejudice, if any, to Applicant was minimal and was sufficiently cured by the trial court's cautionary instruction.  [*Carbonell I*, Doc. # 13-4, at 11].  The state appellate court reasoned:

> First, the polygraph evidence merely indicated that the witness was lying when she said she had no information regarding the murder; subsequent information specifically implicating [Applicant] was not validated through a polygraph test. Moreover, although the polygraph evidence may have bolstered

---

[5] State Court R., 4/17/00 Trial Tr., at 93, 95-96.

[6] *Id.* at 96-97.

[7] *Id.*, 4/19/00 Trial Tr., at 6.

[8] *Id.,* 4/20/00 Trial Tr., at 158, 161.

[9] *Id.*, 4/17/00 Trial Tr., at 93; 4/19/00 Trial Tr., at 5-6; 4/20/00 Trial Tr., at 158.

[10] *Id.*, 4/17/00 Trial Tr., at 94; 4/19/00 Trial Tr., at 6; 4/20/00 Trial Tr., at 159-60.

the witness's credibility because it helped to confirm that she had information the murder, it did not help to confirm what that information was. Conversely, evidence of the polygraph test also damaged the witness's credibility because it revealed that she initially had lied to the police.

Furthermore, the prosecution presented extensive physical evidence, including a deep stain of the victim's blood on [Applicant's] mattress, the outside of which had been cleaned, and another stain of the victim's blood and tire tracks in [Applicant's] jeep, all of which was consistent with the portion of the witness's information that was not subject to the polygraph test.

Accordingly, the curative instruction was adequate to ameliorate any prejudice, and a mistrial was unwarranted. *See People v. Vigil*, *supra* (no mistrial required because evidence at issue was not so prejudicial that, but for its exposure, the jury might not have found defendant guilty).

[*Id*. at 12].

The Tenth Circuit recently summarized the case law governing § 2254 claims involving

the admission of evidence that is alleged to have been so unfairly prejudicial as to violate due

process:

In *Payne v. Tennessee*, 501 U.S. 808, 825 (1991), the Supreme Court held that when a state court admits evidence that is "so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." And in *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), the Court made clear that this principle holds true regardless of whether the evidence at issue was properly admitted pursuant to state law.

*Lott v. Trammell*, 705 F.3d 1167, 1190-1191 (10th Cir. 2013) (parallel citations omitted).

*See also Lisenba v. California*, 314 U.S. 219 (1941) ("In order to declare a denial of [due

process] we must find that the absence of [fundamental] fairness fatally infected the trial; the acts

complained of must be of such quality as necessarily prevents a fair trial.")

The Court finds that the Colorado Court of Appeals' determination of Applicant's claim

was not contrary to, or an unreasonable application of, Supreme Court law.  The state court's

factual findings that the polygraph did not concern the truthfulness of the witness's allegations

against the Applicant and tended to impeach her credibility, rather than bolster it, are presumed

correct, are supported by the record of the trial proceeding, and have not been rebutted by

Applicant.  Furthermore, the trial court's cautionary instruction together with the prosecution's

substantial evidence of guilt refute Applicant's contention that his trial was rendered

fundamentally unfair by the admission of the polygraph testing evidence.  As such, Applicant is

not entitled to federal habeas relief for his second claim.

**E.  Claim 3**

For his third claim, Applicant contends that the trial court violated his Fourteenth

Amendment right to a fair trial by allowing several witnesses to testify that, in their opinion,

Applicant committed the murder and should be punished.

**1.  Challenged testimony and Court of Appeals' determinations**

**a.  testimony from Applicant's girlfriend, sister and uncle's wife**

Applicant's girlfriend testified regarding the reasons she changed her

story, implicated [Applicant], and assisted the police.  She stated:

> Because what he did was wrong. It was completely wrong regardless of
> what . . . regardless of what he did it for. He took this woman away from her kids,
> and away from her family, and she – she was going to go somewhere with her
> life. She was educated. She was beautiful. She really loved her babies. No parent
> should have to bury their children, and no young child should have to see their
> parent buried.

> I mean, he wasn't remorseful enough about it at all. He didn't care. He
> was in it for his own selfish gains. That's all he was thinking about. He wasn't
> thinking about his kids. Nobody. He didn't care. And it was wrong. I couldn't – I
> couldn't sit there with – I don't know how he is doing it, but I couldn't sit there
> with that type of guilt on my shoulders.

[*Carbonell I*, Doc. # 13-4, at 13-14].[11]

> [Applicant's] sister testified that she looked in the back of [Applicant's]
> jeep and gave the police pictures of [Applicant's] bedspread because she was
> suspicious. [Applicant's] [uncle's] wife was asked "Did you go back with your

---

[11]*See also* State Court R., at 116.

husband on July 15th and speak with the police about, um, your activities or your suspicions about John?" to which she replied, "We did."

[*Id.* at 14].[12]

The Colorado Court of Appeals, reviewing for plain error, determined that all three of the witnesses' testimony was relevant to explain why the witnesses took actions to assist the police and that the testimony aided the trier-of-fact in determining the witnesses' credibility. [*Id.* at 13-14]. In addition, the state appellate court found that "the probative value of [the girlfriend's testimony] was not substantially outweighed by any resulting prejudice, and the testimony did not cast doubt upon the judgment of conviction." [*Id.*]. Similarly, with regard to Applicant's sister and his uncle's wife, the state appellate court concluded that their testimony referred "only to suspicion, not opinion as to guilt" and therefore, any prejudice was "minimal" and "did not cast doubt upon the judgment of conviction." [*Id.* at 14-15].

### b. testimony from Applicant's uncle

Applicant also challenges the admission of his uncle's testimony that the reason he spoke with police a second time was because the facts "just didn't seem right" and that he was motivated by "something" in Applicant's "attitude" after the murder. [*Carbonell I*, Doc. # 13-4, at 15].[13]

The Colorado Court of Appeals concluded that the uncle's testimony was "highly relevant" to explain why the witness spoke with the police and was evidence of Applicant's demeanor. [*Id.* at 15].

### c. testimony from Applicant's friend

---

[12]*See also* State Court R., 4/18/00 Trial Tr., at 51, 55-57, 197.

[13]*See also* State Court R. 4/18/00 Trial Tr., at 172-73.

Finally, Applicant maintains that the trial court erred in admitting testimony from one of his wife's friends, who testified to Applicant's demeanor after the murder and further testified that she did not attend the victim's funeral because she felt that "John killed her."[14] The trial court allowed the testimony, stating:

> [I]t goes to the credibility of this witness and her thoughts, how the jury views her testimony. . . [b]ut only for that purpose and that purpose only. It's up to the jury to make the determination as to what they believe, based on the evidence that they hear in this courtroom.[15]

The Colorado Court of Appeals rejected Applicant's claim on the following grounds:

> The testimony assisted the jury in evaluating [Applicant's] behavior after the murder, therefore it was probative, and its admission was not arbitrary or unreasonable. [State case law citation omitted]. And, the court gave a cautionary instruction to the jury to make their own determinations. [*Id.*].

[*Carbonell I*, Doc. # 13-4, at 16].

## 2. Application of AEDPA standard of review[16]

To prevail on claim three, Applicant must show that the admission of the challenged testimony, which the state appellate court determined was relevant and admissible under state law evidentiary rules, was nevertheless "so unduly prejudicial that it render[ed] the trial fundamentally unfair." *Payne*, 501 U.S. at 825. "Evidence is not unfairly prejudicial simply because it is damaging to an opponent's case." *United States v. Curtis*, 344 F.3d 1057, 1067 (10th Cir. 2003) (internal quotation marks and citation omitted); *see also United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir.2008). This Court has examined the entire transcript of

---

[14]State Court R., 4/18/00 Trial Tr., at 115.

[15]*Id.*

[16]Respondents concede in the Answer [Doc. # 23, at 32 n.2], that the AEDPA standard of review applies to the portions of claim three not objected to at trial because the state appellate court resolved those portions of the claim on the merits, rather than on a state procedural ground. *See Cargle*, 317 F.3d at 1206*; Douglas*, 560 F.3d at 1177-78 (where state court indicated only that it had "reviewed" certain unpreserved claims and had "[found] no plain error," claims were presumed adjudicated on the merits, and deference applies).

Applicant's trial and finds that there is nothing in the record to suggest to the jury that it should decide the case on any basis other than the evidence adduced at trial and the law as set out in the trial court's instructions.  In short, Applicant has failed to point to anything to show that the admission of the lay witness testimony opining about his guilty improperly affected the outcome of his trial.  Because the evidence against Applicant was overwhelming without the challenged testimony, the Court cannot find that the state appellate court's resolution of Applicant's claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S.Ct. 786–87. Accordingly, claim three is without merit.

**F.  Claim Four**

In claim four, Applicant asserts that the trial court violated his federal due process rights by admitting the transcripts of "child support hearings" containing irrelevant, unfounded, and prejudicial allegations against him; and by admitting certain testimony of his former wives.

**1.  Challenged evidence and Court of Appeals' determinations**

**a.  transcripts of child support hearings**

The state appellate court found that the child support hearing transcripts were properly admitted under state evidentiary rules and that "although the documents may have reflected negatively on [Applicant's] character, the purpose of the documents to show [Applicant's] motive was independent of any showing of bad character," and, therefore, the documents did not unfairly prejudice Applicant. [*Carbonell I*, Doc. # 13-4, at 17].

**b.  former wives' testimony**

The Colorado Court of Appeals characterized this portion of Applicant's claim as follows:

> [Applicant] concedes that the testimony from certain witnesses stating that they had a child with [him] and sought child support from him was relevant to the prosecution's theory of his motive. However, [Applicant] contends that testimony that he refused to sign a birth certificate and requested a DNA test, asked two of the mothers to have an abortion, asked one of the mothers to be a stripper at his bachelor party, and joked to one of the mothers about opening a strip bar and "sampling" all the strippers was irrelevant and prejudicial.

[*Id.* at 18].[17]

Reviewing for plain error, the state appellate court rejected the claim on the following grounds:

> Most of this testimony was relevant to the prosecution's theory that [Applicant] had a hostile attitude towards his family obligations and was motivated by money, and the probative value of this evidence in establishing the defendant's attitude towards these women and his children was not substantially outweighed by any prejudice. *See* CRE 403. To the extent any of the evidence was irrelevant, it was not so prejudicial as to substantially affect the verdict or the fairness of the trial. [State case law citation omitted].

> Furthermore, to the extent that [Applicant] contends that testimony from one of the mothers that after the victim's death, she moved because somebody broke into her house implied that [Applicant] had committed the burglary, we find no support for this contention in the record.

[*Id.* at 18].

## 2. Application of procedural default doctrine

The Court rejects Respondent's argument in a footnote to the Answer that the portion of claim four addressing the testimony of the wives is procedurally defaulted. [*See* Doc. # 23, at 37, n. 3]. The state appellate court resolved that portion of the claim on the merits, and, in the alternative, under the plain error rule. As such, the AEDPA standard of review applies. *See Cargle*, 317 F.3d at 1206; *see also Douglas*, 560 F.3d at 1178 (if it not clear from the state court's analysis whether the court's disposition of a petitioner's claim was merits or non-merits

---

[17]*See also* State Court R., 4/17/00 Trial Tr., at 38-40, 42, 44; 166-170, 174, 185; 4/18/00 Trial Tr., at 5-6.

based, the federal habeas court assumes the state's review is on the merits and affords it §

22554(d) deference).

### 3. Application of AEDPA standard of review

Again, the applicable federal standard is whether the admission of the challenged

evidence rendered Applicant's trial fundamentally unfair, in violation of due process. *Payne*,

501 U.S. at 825.  In light of the substantial evidence of Applicant's guilt, and the highly general

nature of the controlling federal standard, the Court cannot find that the state appellate court's

resolution of the issues presented in claim four was contrary to, or an unreasonable application

of, federal law.  *See Renico v. Lett*, 559 U.S. 766, 776 (2010) ("Because AEDPA authorizes

federal courts to grant relief only when state courts act unreasonably, it follows that '[t]he more

general the rule' at issue—and thus the greater the potential for reasoned disagreement among

fair-minded judges—'the more leeway [state] courts have in reaching outcomes in case-by-case

determinations.'")(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  As such, the

Court finds that the state appellate court's resolution of his claim did not run afoul of federal law.

Claim four is without merit.

## G.  Claim Five

In claim five, Applicant asserts that he was deprived of a fair trial by the cumulative

prejudicial effect of the trial court's errors.

The Colorado Court of Appeals rejected this claim based on the following reasoning:

> [T]he prosecution presented extensive physical evidence of [Applicant's]
> guilt, including a deep stain of the victim's blood on [Applicant's] newly cleaned
> mattress, and another stain of the victim's blood and tire tracks in [Applicant's]
> jeep. The physical evidence was consistent with testimony from the witnesses,
> and the prosecution established a motive for the murder.
>
> Moreover, any evidentiary errors were limited. Thus, in light of all of the
> evidence of [Applicant's] guilt, such errors, viewed individually or cumulatively,

could not have influenced the verdict or affected the fairness of the trial. [State case law citations omitted].

[*Carbonell I*, Doc. # 13-4, at 19-20].

"'In the federal habeas context, the only otherwise harmless errors that can be aggregated are federal constitutional errors, and such errors will suffice to permit relief under cumulative error doctrine only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness.'" *Littlejohn v. Trammell*, 704 F.3d 817, 868 (10th Cir. 2013) (quoting *Matthews v. Workman*, 577 F.3d 1175, 1195 n. 10 (10th Cir. 2009) (internal quotation marks and citation omitted)).

There is a split in the Circuit Courts of Appeal as to whether the need to conduct a cumulative-error analysis is clearly established federal law under § 2254(d)(1). See *Hooks v. Workman*, 689 F.3d 1148, 1194 n. 24 (10th Cir. 2012). This Court need not resolve the issue because under the deferential AEDPA standard of review, Applicant is not entitled to relief. The Colorado Court of Appeals rejected all of Applicant's individual claims of constitutional trial court error on the merits. This Court has concluded that the state appellate court's resolution of Applicant's claims comported with federal law. The cumulative error doctrine "'does not apply . . . to the cumulative effect of non-errors.'" *See Hooks*, 689 F.3d at 1194-95 (quoting *Moore v. Gibson*, 195 F.3d 1152, 1175 (10th Cir. 1999) (internal quotation marks and citation omitted); *United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir. 1990) ("[A] cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect [of non-errors].").

Moreover, even if there were multiple constitutional errors at Applicant's criminal trial, the prosecution's evidence of Applicant's guilt was significant, so that any cumulative prejudice did not have "a substantial and injurious effect or influence in determining the jury's

verdict.'" *Fry v. Pliler*, 551 U.S. 112, 116 (2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619,

631 (1993)).  Applicant thus cannot prevail on his fifth claim for relief.

## H.  Claim Six

For his sixth and final claim, Applicant contends that his trial counsel was

constitutionally ineffective in failing to: (a) follow up on an initial contact with an adverse trial

witness (his girlfriend) to determine whether she would submit to a defense interview; (b)

present at trial the testimony of Barbara Johnson, who told a defense investigator that she would

testify to facts amounting to an alibi; (c) discuss with Applicant the possibility of presenting an

alternate suspect defense, depriving Applicant of the opportunity to decide what theory counsel

would pursue at trial; (d) ask Applicant's former boss on direct examination whether Applicant

"would have been aware" of a statute precluding him from collecting a life insurance payout on

his wife if it was discovered that he had murdered her; (e) hire experts to evaluate: (1) whether

the victim's blood, found on the marital mattress, might have been menstrual blood, and, (2)

whether Applicant's mental state at the time of the crime might have supported a second degree

murder instruction or some other theory of defense; (f) request a curative instruction informing

the jury that polygraphs are not reliable, and that the jurors should disregard any evidence

concerning the previously mentioned polygraph; and, (g) "cumulative error deprived Mr.

Carbonell of his Sixth Amendment right to effective assistance of counsel." [*Id.* at 7-8].

To prevail on his claims that trial counsel was constitutionally ineffective, Applicant

must show that: (1) counsel's legal representation fell below an objective standard of

reasonableness; and (2) "the deficient performance prejudiced the defense."  *Strickland v.*

*Washington*, 466 U.S. 668, 687-88 (1984). Judicial scrutiny of counsel's performance is highly

deferential.  *Id.*  at 689.  Counsel's decisions are presumed to represent "sound trial strategy;"

"[f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999) (internal quotations omitted).   Under the AEDPA standard of review,  "the question is not whether counsel's actions were reasonable.   The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 131 S.Ct. at 788.

Prejudice exists when there is a reasonable probability that, but for counsel's defective representation, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 693.   The likelihood of a different result must be substantial, not just conceivable.  *Id.*   The Court need not address both prongs of the *Strickland* inquiry if Applicant's claim fails on one.  *Id.*   at 697.

The Court addresses each of Applicant's ineffective assistance of counsel claims in turn.

## 1.  Claims 6(a) and 6(b)

In claims 6(a) and 6(b), Applicant contends that his trial counsel was constitutionally ineffective in failing to: follow up on an initial contact with an adverse trial witness (his girlfriend) to determine whether she would submit to a defense interview; and, call Barbara Johnson as a defense witness after she told a defense investigator that she would testify to facts amounting to an alibi.

The Colorado Court of Appeals analyzed Applicant's claims under the *Strickland* standard and concluded that they lacked merit based on the following reasoning:

### A.  Failure to Interview Prosecution Witness

[Applicant] asserts that a defense investigator attempted to interview his girlfriend, and that she "was deciding whether to speak with the investigator." [Applicant] claims that the failure to follow up with his girlfriend established counsel's ineffectiveness.

In denying this claim, the trial court found that [Applicant] failed to establish both deficient performance and prejudice. The trial court noted that [Applicant] did not establish that the girlfriend would have spoken with the defense investigator, and that there were no postconviction interviews or affidavits of the witness indicating that she would have cooperated with the defense. Because there was no indication that she would have cooperated, the court found no showing of ineffective assistance.

Furthermore, the court highlighted that the girlfriend was, in fact, antagonistic to the defense, from which the court inferred that she would not have been cooperative. The court also noted that defense counsel thoroughly and effectively cross-examined the girlfriend, "bringing out motive, inconsistencies, self-interest, and bias."
. . .

We conclude that [Applicant] failed to establish prejudice from the alleged ineffective assistance of counsel. We agree with the trial court that the girlfriend's testimony was completely antagonistic to the defense. Furthermore, [Applicant] failed to allege that the girlfriend would have been cooperative, how her cross-examination would have been different, or how a more thorough investigation would have uncovered substantial evidence that, if introduced, reasonably might have led to a different result. [State case law citations omitted].

[*Carbonell II*, Doc. # 13-9, at 3-4, 5-7].

### D. Failure to Call Witness to Impeach Girlfriend's Credibility

[Applicant] argues that counsel should have called a witness who would have further impeached his girlfriend's testimony. Specifically, he claims that the witness would have testified that [Applicant] was not with the girlfriend when he allegedly made certain inculpatory statements to the girlfriend, but rather was with the witness at a different location. [Applicant] asserts that this testimony would have impeached the girlfriend's testimony.

The trial court found that [Applicant] failed to establish that such testimony would have affected the outcome of the trial. The court noted that, at most, the witness would have called the girlfriend's credibility into question regarding a prior event, and that the information was "collateral as it did not remove the [Applicant] from the scene of the crime or explain any of the substantial evidence showing the [Applicant] committed the crime."

We conclude that [Applicant's] claim is lacking in detail and, thus, is insufficient to substantiate an ineffectiveness claim for three reasons.  First, [Applicant] failed to offer any indication of what timeframe the proposed witness would have contradicted. Second, [Applicant] failed to indicate whether the proposed witness was available and willing to testify. Third, the proposed

> witness's testimony had nothing to do with the actual crime, but instead only
> further attacked the credibility of [Applicant's] girlfriend, which had been
> attacked throughout the trial. Thus, we agree with the trial court's rejection of
> this claim.

[*Id.* at 11, 12].

Under *Strickland*, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 690-91. A particular decision not to investigate must be assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments. *Id.* Here, the state appellate court's conclusion that defense counsel made a reasonable decision not to follow up on his initial contact with Applicant's girlfriend did not run afoul of *Strickland* because the state court record supports the state appellate court's findings that the girlfriend's testimony was antagonistic to him,[18] and that defense counsel "thoroughly and effectively" cross-examined her.[19] Applicant does not point to any information to indicate that the girlfriend would have provided favorable testimony, had counsel contacted her again to see if she would testify as a defense witness. *See Cummings v. Sirmons*, 506 F.3d 1211, 1228-29, 31-32 (10th Cir. 2007) (allegations based on unsubstantiated assertions of fact are not sufficient to satisfy *Strickland*); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (an ineffective assistance of counsel claim fails where the petitioner's allegations are conclusory with no supporting facts). Claim 6(a) therefore is without merit.

With regard to Applicant's claim that defense counsel should have called a witness who would have further impeached his girlfriend's testimony, the Court finds that the Colorado Court of Appeals' resolution of this claim was consistent with *Strickland* because Applicant has not

---

[18]*See generally* State Court R., 4/17/00 Trial Tr., at 32-117.

[19]*Id.* at 117-155.

shown that the failure to call the witness affected the jury's verdict.  The witness's purported

testimony pertained to statements made by Applicant's girlfriend that inculpated Applicant in his

wife's murder; however, as the state appellate court recognized, the witness's testimony merely

addresses the credibility of the girlfriend's testimony and did not exculpate Applicant from the

crime.  Accordingly, the Court finds that claim 6(b) is also without merit.

### 2. Claim 6(d)

In claim 6(d), Applicant argues that trial counsel should have questioned Applicant's

boss (the sole defense witness) about the "slasher statute," which precludes payment on a life

insurance policy to anyone found responsible for the insured's death.

The Colorado Court of Appeals rejected this claim under *Strickland* on the following

grounds:

> The trial court found that [Applicant] failed to demonstrate either deficient
> performance or prejudice.  The court noted that the terms of the insurance policy
> were elicited from witnesses along with the fact that [Applicant] was aware that
> the insurance company would investigate the cause of death before paying
> benefits and would withhold payment if the death was suspicious. The court
> stated that this testimony gave the jury "complete negation of the prosecution's
> theory" as related to [Applicant's] motive that the policy was only taken out to
> obtain money.
>
> After a review of the record, we agree with the trial court's summary
> dismissal. During [Applicant's] boss's testimony, he described the different types
> of policies and the training that [Applicant] had received on them. Then, on cross-
> examination, [Applicant's] boss indicated approximate amounts that [Applicant]
> would receive in the event of the victim's death and said that benefits may not be
> dispersed in the event of an intentional killing. On redirect, he testified that the
> insurance company's legal department decides if claims are proper and if money
> should be paid.
>
> This testimony sufficiently informed the jury as to what [Applicant]  knew
> about the insurance policies and their effect, including that the insurance company
> would investigate the cause of death before paying benefits and would withhold
> payment if the death was suspicious. Thus, we agree with the trial court's
> conclusion that, although the "slasher statute" was not directly mentioned, its
> effect was presented to the jury.

[*Carbonell II*, Doc. # 13-9, at 8-9].[20]

The Court finds that Applicant has failed to establish that trial counsel's failure to question his boss about the "slasher statute" was not a reasonable strategic decision, or that it affected the outcome of his trial, given that evidence concerning the ramification of the statute was presented through Applicant's boss and other witnesses.[21]   Further, Applicant cannot show that he was prejudiced because the evidence before the jury was that Applicant knew he would be unable to collect on an accidental death benefit policy insured to his wife if it was determined that his wife's death was intentional. The Court finds that the state appellate court's decision comported with *Strickland*.  Applicant thus cannot prevail on claim 6(d).

### 3.  Claim 6(e)

In claim 6(e), Applicant asserts that trial counsel should have hired experts to evaluate: (1) whether the victim's blood, found on the marital mattress, might have been menstrual blood, and, (2) whether Applicant's mental state at the time of the crime might have supported a second degree murder instruction or some other theory of defense.

In the state post-conviction proceeding, the Colorado Court of Appeals rejected Applicant's claim that counsel should have hired a forensic expert to testify about the blood on the marital mattress because "counsel clearly elicited, on cross-examination of the state's experts, that the blood found on the mattress could have been menstrual blood, and thus the evidence sought by [Applicant] was presented." [*Carbonell II*, Doc.

---

[20]*See also* State Court R., 4/21/00 Trial Tr., at 68-86.

[21]*Id*. at 81-86; 4/19/00 Trial Tr., at 146.

# 13-9, at 11].[22]   Applicant cannot show that he was constitutionally prejudiced at trial where the purported defense expert testimony was presented through the State's forensic expert. Accordingly, the Court of Appeals' resolution of this portion of claim 6(e) was consistent with *Strickland*.

The state appellate court also concluded that Applicant "fail[ed] to state facts supporting a heat of passion defense" [*id.* at 14], where the evidence showed that "[Applicant] beat and strangled the victim and then left her body next to a bike trial to be found the following day." [*Id.* at 15].   As discussed previously, conclusory allegations of ineffective assistance of counsel, unsupported by specific facts, are insufficient to show a Sixth Amendment violation.   *See Cummings*, 506 F.3d at 1228-29, 31-32;  *Fisher*, 38 F.3d at 1147.   Moreover, trial counsel's failure to hire an expert to evaluate a heat of passion defense constituted reasonable trial strategy because the evidence presented at Applicant's trial negates the applicability of the defense. Finally, Applicant fails to explain what other theory of defense might have been presented through expert testimony, or point to any evidence to support it.   *See Cummings*, 506 F.3d at 1233 (holding that a petitioner's ineffective assistance claim failed to satisfy Strickland's first prong because nothing demonstrated the content of a potential expert's testimony).   The Court thus finds that the state appellate court's resolution of Applicant's claim comported with *Strickland*.   Applicant cannot prevail on claim 6(e).

### 4.  Claims 6(c), 6(f) and 6(g)

In claim 6(c), Applicant asserts that defense counsel failed to discuss with Applicant the possibility of presenting an alternate suspect defense, depriving Applicant of the opportunity to decide what defense theory to pursue at trial.   In claim 6(f),  Applicant claims that defense

---

[22]*See also* State Court R., 4/20/00 Trial Tr., at 108.

counsel was ineffective in failing to request a curative instruction informing the jury that polygraphs are not reliable, and that the jurors should disregard any evidence concerning the previously mentioned polygraph.  In claim 6(g), Applicant claims that "cumulative error deprived Mr. Carbonell of his Sixth Amendment right to effective assistance of counsel."

As discussed previously, Applicant did not raise claims 6(c), 6(f) and 6(g) in the Colorado Court of Appeals and Magistrate Judge Boland determined that the claims are procedurally defaulted.  [Doc. # 20, at 11].  Applicant has asserted that his procedural default should be excused under *Martinez v. Ryan*, __ U.S. __, 132 S.Ct. 1309 (2012),[23] because his court-appointed counsel was ineffective in the state post-conviction proceeding.  In a previous Order, Magistrate Judge Boland deferred ruling on the applicability of *Martinez*, pending this Court's determination of whether the procedurally defaulted ineffective assistance of counsel claims were "substantial." [Doc. # 20, at 14].  For the reasons discussed below, the Court finds that none of the procedurally barred claims are "substantial," so as to excuse Applicant's procedural default.

With regard to claim 6(c), Applicant contends that trial counsel failed to investigate, as an alternate suspect, a man with whom the victim purportedly had an affair.  However, Applicant does not point to any evidence to support a defense theory that an alternate suspect committed the crime.  Furthermore, the Court has carefully reviewed the state court record and finds nothing in the trial court proceedings to indicate an alternate suspect.  As such, it appears that defense counsel made a strategic decision not to pursue an alternate suspect defense at trial. And, absent

---

[23]In *Martinez*, the Supreme Court held that where a state permits a defendant to challenge the assistance of trial counsel only in a post-conviction proceeding, then the absence of post-conviction counsel, or ineffective assistance of post-conviction counsel, can constitute cause for the habeas petitioner's default of claims of ineffective assistance of trial counsel. 132 S.Ct. at 1318.  The petitioner must also show that the underlying ineffective assistance of counsel claim is "substantial" – i.e., has "some merit."  *Id.*

any information pointing to an alternate suspect, Applicant cannot show that he was prejudiced by counsel's failure to raise the defense. *See Cummings*, 506 F.3d at 1228-29, 31-32; *Fisher*, 38 F.3d at 1147. The Court finds that Applicant's contention of ineffective assistance of counsel raised in claim 6(c) is not "substantial" and therefore does not excuse his procedural default of that claim. Claim 6(c) will be dismissed as procedurally barred.

As to claim 6(f), the state court record reflects that the trial court gave a cautionary instruction to the jury that polygraphs are not reliable, and that the jurors should disregard any evidence concerning polygraph testing.[24] Trial counsel's failure to request an instruction that was actually given to the jury was not objectively unreasonable under the circumstances. The Court finds that claim 6(f) does not present a "substantial" ineffective assistance of counsel claim and the claim will thus be dismissed as procedurally barred.

Finally, claim 6(g) does not present a "substantial" claim of ineffective assistance of counsel because the Court has determined that none of the alleged ineffective assistance of counsel claims have merit. As such, there are no Sixth Amendment errors to accumulate. *See Hooks*, 689 F.3d at 1194-95. Claim 6(g) will also be dismissed as procedurally barred.

## IV.  ORDER

Accordingly, it is ORDERED that:

1.     Applicant John Carbonell's Application For a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Doc. # 1] is DENIED and this case is DISMISSED on the merits.

2.     No certificate of appealability will issue because Applicant has not made a

---

[24]State Court R., 4/20/00 Trial Tr., at 159-60.

substantial showing that jurists of reason would find it debatable whether the jurisdictional and procedural rulings are correct and whether the Application states a valid claim of the denial of a constitutional right.

      3.     Leave to proceed *in forma pauperis* on appeal is denied.   The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  Accordingly, if Applicant files a notice of appeal he must also pay the full $455 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

      DATED this 18th day of September, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge